**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG**

**TERRY W. CHAMBERS;
FIRST PRIORITY MEDICAL CHOICE, INC.;
TRI-STATE PHYSICIAN MANAGEMENT, INC.;
CHESTNUT CONSTRUCTION, INC.; and
PENDLETON DEVELOPERS, LTD.**

       **Plaintiffs**             Electronically filed:  April 10. 2015

**v.**                **CIVIL ACTION NO.**  <u>3:15-cv-43 (Groh)</u>

**CONTINENTAL CASUALTY COMPANY,**

       **Defendant.**

<u>**COMPLAINT**</u>

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

1.     Plaintiff Terry W. Chambers is and was at all times relevant to this action a citizen and resident of Martinsburg, Berkeley County, West Virginia.

2.     Plaintiff First Priority Medical Corporation is and was at all times relevant to this action a corporation incorporated in West Virginia and formerly authorized to do business in West Virginia.

3.  Plaintiff Tri-State Physician Management, Inc. is and was at all times relevant to this action a corporation incorporated in West Virginia and formerly authorized to do business in West Virginia.

4.  Plaintiff Chestnut Construction, Inc. is and was at all times relevant to this action a corporation incorporated in West Virginia and formerly authorized to do business in West Virginia.

5.  Plaintiff Pendleton Developers, Ltd. is and was at all times relevant to this action a corporation incorporated in West Virginia and formerly authorized to do business in West Virginia.

6.  Defendant Continental Casualty Company is and was at all times relevant to this action a corporation incorporated in Illinois and authorized to do business in West Virginia.

7.  Plaintiffs seek a declaration of their rights under 28 U.S.C. §§ 2201(a) and 2202 and West Virginia Code § 55-13-1 *et seq.* to resolve an actual controversy within this Court's jurisdiction between the parties.

8.  This Court has jurisdiction of this action under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

9.  Venue is proper with this Court under 28 U.S.C. § 1391(b) because a
    substantial part of the events or omissions giving rise to Plaintiffs' claims
    occurred in the Northern District of West Virginia.


## FACTS

10. On March 4, 2011, Plaintiffs filed a civil action against Hersh Business
    Services, Ltd. d/b/a HBS Tax and HBS Class Action Administration ("HBS")
    in the Circuit Court of Berkeley County, West Virginia (*Terry W. Chambers,*
    *First Priority Medical Choice, Inc., Tri-State Physician Management, Inc.,*
    *Chestnut Construction, Inc., and Pendleton Developers, Ltd. v. Hersh Business*
    *Services, Ltd. d/b/a HBS Tax and HBS Class Action Administration*, Civil Action
    No. 11-C-180).

11. Plaintiffs alleged claims for conversion, unjust enrichment, breach of
    contract, negligence, fraud, and punitive damages, arising from HBS'
    alleged overbilling of Plaintiffs for services it provided. Plaintiffs' complaint
    is attached as Exhibit A.

12. Specifically, Plaintiffs alleged as follows in the complaint:

                                 ***

        15. In 2009, Chambers realized that HBS had grossly overbilled
            First Priority, Tri-State, and Chestnut for services it had
            rendered.
                                 ***

3

22.     The Plaintiffs discovered subsequently that HBS had overbilled them by at least $90,000 by charging them for services that it claimed to have provided, but had not.

***

## COUNT II
## UNJUST ENRICHMENT

***

37.     HBS overbilled the Plaintiffs by at least $90,000 by charging them for services that it claimed to have provided, but had not.

38.     The Plaintiffs paid HBS' bills because they were not aware at the time of the overbilling and assumed that HBS was accurate and honest in the amounts that it was billing.

39.     HBS accepted and retained the payments from the Plaintiffs, even though HBS knew that the payments were for work that had not been performed and thus that HBS was not entitled to the payments.

40.     HBS has unjustly enriched itself by the amount that it overbilled the Plaintiffs and for which it received payments.

***

## COUNT III
## BREACH OF CONTRACT

***

46.     HBS' contract with the Plaintiffs obligated HBS to submit bills to the Plaintiffs that were accurate and honest.

***

48.     By overbilling the Plaintiffs by at least $90,000 for services that it claimed to have provided, but had not, HBS breached its contract with the Plaintiffs.

***

4

## COUNT IV
## NEGLIGENCE

***

54.     HBS had a duty to the Plaintiffs to submit bills to the Plaintiffs that were accurate and honest.

***

56.     By overbilling the Plaintiffs by at least $90,000 for services that it claimed to have provided, but had not, HBS breached its duty to the Plaintiffs.

***

13.     On May 11, 2011, HBS served its answers and responses to Plaintiffs' first sets of interrogatories and requests for production of documents, in which it confirmed that an insurance policy issued by Continental could provide coverage for Plaintiffs' claims, and denied that Continental was defending the action under a reservation of rights. HBS' answers and responses are attached collectively as Exhibit B.

14.     On September 12, 2012, the Court granted Plaintiffs' motion for leave to amend their complaint in order to add allegations to their claims for negligence and breach of contract regarding Defendant's preparation and filing of Plaintiffs' income tax returns and schedules, and ordered the amended complaint filed. These new allegations did not affect Plaintiffs' claims for overbilling by HBS. Plaintiffs' amended complaint is attached as Exhibit C.

15.     On March 16, 2015, the parties and/or their principals, their respective counsel, and Mary Babbo-Brown, an attorney and adjuster for Continental, attended a court-order mediation conducted by F. Samuel Byrer, Esquire.

16.     During the course of the mediation, Plaintiffs and their counsel learned, for the first time, that Continental was defending the lawsuit under a reservation of rights that would exclude coverage for Plaintiffs' damages caused by HBS' alleged overbilling.

17.     At the mediation, Mr. Byrer provided Plaintiffs and their counsel with copies of Mary Babbo's January 26, 2012 letter to Brett Hersh, HBS' principal, in which she advised of Continental's reservation of rights and identified the policy language that purported to support the reservation, and the Tax and Financial Services Professional Liability Policy ("the Policy"). Ms. Babbo's letter and the Policy are attached collectively as Exhibit D.

18.     According to Ms. Babbo's letter, "Plaintiff also are [*sic*] claiming that you overbilled them for services provided. This claim amounts to a forfeiture under the Policy and therefore, also falls outside of the Coverage Agreements."

19.     Ms. Babbo's letter set forth the following Coverage Agreements in the Policy:

6

## II.   COVERAGE AGREEMENTS

A.   We will pay on **your** behalf all sums in excess of the deductible, up to our limits of liability, that **you** become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against **you** and reported in writing to us during the **policy period** by reason of an act or omission in the performance of **professional services** by **you** or by any person for whom you are legally liable provided that:

1.   **you** did not give notice to a **prior insurer** of any act of omission or **interrelated act or omission**;

2.   prior to the effective date of this Policy, none of **you** had a basis to believe that any such act or omission, or **interrelated act or omission**, might reasonably be expected to be the basis of a **claim**;

3.   such act or omission happened subsequent to the **prior acts date**, if any;

4.   **you** did not give notice to a **prior insurer** of an **interrelated claim**.

20.   Her letter also noted that the Policy defines "damages" as follows:

**Damages** are monetary judgments, awards and settlements, provided any settlement is negotiated by or with our assistance and approval. **Damages** also include prejudgment or post-judgment interest awarded against you on such judgments or awards.

**Damages** do not include:

A.   civil or criminal fines, penalties, sanctions or forfeitures, imposed on **you** whether pursuant to law, statute, regulation or court rule;

B.   punitive or exemplary amounts, and the multiplied portion of multiplied awards on **claims** otherwise payable under this Policy;

C.   amounts for which **you** are not financially liable or that are without legal recourse to **you**;

D.   amounts owed by **you** to **your** client by reason of money loaned to or invested with **you** in **your**

7

individual capacity for **your** personal use or investment in **your** own venture;

E.    any return, withdrawal or reduction of fees or other compensation for **professional services** rendered by **you** or any expenses incurred by **you** for modification or correction of **professional services** rendered by **you**.

## COUNT I
## DECLARATION OF OBLIGATION TO INDEMNIFY

21.    Plaintiffs incorporate paragraphs 1 through 20 by reference hereto as if set forth verbatim hereinafter.

22.    Continental's refusal to provide coverage and/or indemnify HBS for damages resulting from HBS' alleged overbilling of Plaintiffs constitutes an actual, substantial, and justiciable controversy between the parties that requires resolution by the Court.

23.    Plaintiffs' claims for negligence, breach of contract, and unjust enrichment include allegations of HBS' overbilling.

24.    The Policy provides coverage for a claim made "by reason of an act or omission in the performance of **professional services** by **you** or by any person for whom **you** are legally liable …."

25.    HBS' alleged overbilling of Plaintiffs occurred as part of the professional services rendered by HBS and therefore constitutes an "act or omission in

the performance of professional services by you" for which coverage exists under the Policy.

26. Although Continental characterizes Plaintiffs' claims for alleged overbilling as a "forfeiture" under the Policy, for which no coverage exists, the Policy does not define forfeiture or provide any guidance as to its meaning.

27. Without a definition of forfeiture, Continental's use of the term is vague and ambiguous and therefore cannot support Continental's decision to deny coverage for Plaintiffs' claims.

28. Based on these provisions, coverage exists under the Policy for Plaintiffs' claims for overbilling by HBS, which obligates Continental to defend and indemnify HBS.

**WHEREFORE**, Plaintiffs Terry W. Chambers, First Priority Medical Choice, Inc., Tri-State Physician Management, Inc., Chestnut Construction, Inc., and Pendleton Developers, Ltd pray that this Honorable Court declare that Defendant Continental Casualty Company's insurance policy provides coverage for Plaintiffs' claims of overbilling, and therefore that Defendant Continental Casualty Company has a duty to defend and indemnify Hersh Business Services, Ltd. d/b/a HBS Tax and HBS Class Action Administration against those claims, and grant any other relief the Court deems just and proper.

**TERRY W. CHAMBERS, FIRST PRIORITY MEDICAL CHOICE, INC., TRI-STATE PHYSICIAN MANAGEMENT, INC., CHESTNUT CONSTRUCTION, INC., AND PENDLETON DEVELOPERS, LTD.**

**By Counsel**

/s/ Jeffrey V. Mehalic

Jeffrey V. Mehalic (WV State Bar No. 2519)
Law Offices of Jeffrey V. Mehalic
364 Patteson Drive, #228
Morgantown, WV 26505-3202
(304) 346-3462
*Counsel for Plaintiffs Terry W. Chambers,*
*First Priority Medical Choice, Inc.,*
*Tri-State Physician Management, Inc.,*
*Chestnut Construction, Inc. and*
*Pendleton Developers, Ltd.*